UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIMBO BAKERIES USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHRIS BOTTICELLA, <br><br> Defendant. | Civil Action No. _____ |

## NATURE OF THE ACTION

Bimbo Bakeries USA, Inc. ("BBakeries," "Plaintiff" or "Company"), by and through its undersigned counsel, hereby brings the following Complaint against Defendant Christ Botticella ("Defendant," or "Botticella") seeking injunctive relief.

## JURISDICTION AND VENUE

1. Jurisdiction is proper due to the express consent of the Defendant, pursuant to the terms of paragraph 15 of Defendant's executed Confidentiality, Non-Solicitation and Invention Assignment Agreement ("Confidentiality Agreement" or "Agreement") dated March 13, 2009, attached hereto as Ex. A.

2. Venue is proper in the District Court pursuant to 28 U.S.C. §1391(a) and the terms of paragraph 15 of Defendant's Confidentiality Agreement.

3. The District Court has subject matter jurisdiction over all counts pursuant to 28 U.S.C. §1332 since the amount in controversy in the present action exceeds the sum or value of seventy five thousand dollars ($75,000.00), exclusive of interests and costs, and there exists complete diversity of citizenship, as Plaintiff is a citizen of Delaware and Pennsylvania and Defendant is a citizen of California.

## THE PARTIES

4. Plaintiff Bimbo Bakeries USA, Inc. is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.

5. Defendant Chris Botticella is an individual and a citizen of the State of California, residing at 31721 Via Coyote, Trabuco Canyon, CA 92679.

## FACTUAL ALLEGATIONS

6. BBakeries, and its affiliates (collectively "BBU"), produce and distribute high-quality baked goods under many brand names, including, Thomas', Entenmann's, Arnold, Oroweat, Mrs Baird's, Stroehhmann, and Boboli.

7. Botticella has been employed by BBakeries, or its predecessors, continuously for approximately twenty years.

8. Currently, Botticella is the Vice President of Operations for Bimbo Bakeries USA's Western Region. In that capacity, Botticella has direct responsibility for five production facilities and also oversees "co-packers"[1] operations within his region.

9. Through his employment, Botticella has acquired the knowledge necessary to produce many of BBU's products without reference to any written recipes or instructions, including but not limited to Thomas' English Muffins, Thomas' Bagels, all Oroweat bread products, Arnold and Oroweat Sandwich Thins, and Entemann's cake products. Botticella's knowledge includes but is not limited to the recipes for these and other products. Botticella also knows the product specifications. For example, the weight of each dough piece, the bake profile of the products, the necessary acidity and other production standards not known to the public.

---

[1] Co-packers are contract manufacturers. They are bakeries not owned by BBU or its affiliates but produce BBU branded products pursuant to a contractual relationship.

2

10. For example, Botticella is one of less than ten people in the world with full knowledge of how to produce Thomas' English Muffins.

11. BBU and its predecessors have gone to great lengths to keep secret the recipe and process for making Thomas' English Muffins for over seventy-five years.

12. Thomas' English Muffins are a unique product, famous for their distinctive "nooks and crannies" characteristics.

13. As a result of his employment, Botticella learned trade secrets relating to the production of the Thomas' English Muffins, including not only its recipe, but also the equipment necessary for production, necessary moisture level, and the way the product is baked which all contribute to its distinctive characteristics.

14. With the knowledge described in paragraph 13, Botticella could produce an English Muffin that might look a bit different, but that would nevertheless possess the distinctive taste, texture and flavor character that distinguish that distinguish the Tomas' English Muffin and that have been the foundation of the product's success.

15. As a result of corporate acquisitions and reorganizations, responsibility for a facility in Placentia, California that produces Thomas' English Muffins came under Botticella's after January 21, 2009.[2] As a result, Botticella was required to execute the Confidentiality Agreement, and he did so on March 13, 2009.

16. Execution of the Confidentiality Agreement was a condition of Botticella's continued employment.

17. Without such an agreement Botticella would not have been permitted or able to perform his responsibilities, which included the supervision of the Placentia facility.

---

[2] On January 21, 2009 George Weston Bakeries, whose brands included Thomas, was sold to BBU, Inc..

18. Botticella has full knowledge necessary to produce Sandwich Thins, a new product marketed under the Arnold and Oroweat brand.

19. Sandwich Thins are rolls marketed for making sandwiches that contain just 100 calories per serving. They are a new product category and have proven wildly popular since their introduction in 2009.

20. It was extremely challenging to develop Sandwich Thins, a high quality product that tastes good, is substantial enough to support a hearty deli-style sandwich, and contains only 100 calories per serving.

21. At least $18 Million was spent on reasearch and development, bakery equipment and marketing this Sandwich Thins.

22. Many of BBU's competitors, including, upon information and belief Hostess Brands, Inc. ("Hostess"), rely heavily on premixed ingredients in the production of baked goods.

23. BBU uses almost no premixed ingredients, instead buying raw ingredients separately at significant cost savings.

24. As a result of his employment with BBakeries, Botticella possesses the confidential know-how regarding the large scale production of baked goods from such separate ingredients.

25. In addition to trade secrets relating directly to production, Botticella has been privy to trade secrets and confidential information relating to every aspect of BBU's business.

26. For example, Botticella knows highly confidential strategic information regarding which plants and lines will be closed and where expansions are planned over the next several years.

27. By way of a specific example, Botticella is privy to ongoing highly confidential negotiations for a new plant in the Northwestern United States.

28. By way of further example, Botticella has very sensitive knowledge regarding specific expansion plans in California.

29. By way of further example, Dan Babin has spent a lot of time teaching Botticella efficiency techniques that Babin developed over many years at George Weston Bakeries and its predecessor.

30. Botticella came under Babin's indirect supervision subsequent to George Weston Bakeries acquisition by BBU, Inc.

31. The particular strategies that Babin developed and implemented at George Weston are highly confidential and are expected to result in approximately $60,000,000 in reduced costs as a result of its implementation in the legacy BBakeries territories, such as Botticella's.

32. These strategies referenced in paragraph 31 include not only labor management techniques, but also highly proprietary and confidential unique baking equipment sequencing techniques that reduce costs significantly.

33. Knowledge of the strategies referenced in paragraph 31 would be highly valuable to BBakeries' competitors, including Hostess.

34. Botticella is also privy to highly sensitive and confidential cost structure information regarding most, if not all, of BBakeries products. Botticella was also privy to pricing, promotion and customer strategies for the sale of BBakeries products.

35. If a competitor were to know BBakeries precise costs for production, and/or promotional and customer strategies they would have a substantial unfair advantage when setting prices and bidding for contracts.

36. On January 4, 2010, Botticella submitted notice of his resignation, with a planned departure date of January 15, 2010.

37. On January 4, 2010, Botticella informed his direct superior that he was retiring.

38. Attached hereto as Exhibit B is a true and correct copy of an e-mail sent by Botticella announcing his departure and referencing his need for COBRA benefits.

39. On the belief that Botticella was retiring from work completely, Botticella was permitted to continue working during that two-week notice period and his transition was generally informal, as management expected that he could be contacted as needed if questions arose after his departure.

40. On January 13, 2010, rumors percolated to senior management that Botticella was not, in fact, retiring and instead planned to go to work for one of BBU's major competitors Hostess.[3]

41. Upon information and belief, prior to January 13, 2010 no members of the senior management of BBU or any of its affiliates knew or suspected that Botticella planned to go to work at Hostess.

---

[3] Hostess Brands, Inc. produces and distributes baked goods under many different brand names, including Hostess, Wonder, Home Pride, Dolly, Nature's Pride, Eddy's, Sweetheart, Drake's, Merita, Butternut, Beefsteak, Cotton's Holsum, J.J. Nissen, Millbrook, and Bread du Jour.

42. When confronted by senior management on January 13, 2010, Botticella admitted that he had accepted a job with Hostess, and planned to begin work at Hostess on January 18, 2010.

43. During the period from January 4, 2010 to January 13, 2010, Botticella participated in numerous meetings where confidential information and trade secrets were discussed and revealed.

44. On January 7, 2010, Botticella participated in a meeting where specific strategies were discussed for competing with Hostess in the snack-cake market

## COUNT I

### BREACH OF CONFIDENTIALITY AGREEMENT

45. Paragraphs 1 through 44 are incorporated by reference as if set forth fully therein.

46. Defendant continues to be bound by his Confidentiality Agreement to not use or disclose, either directly or indirectly, BBU Inc.'s[4] confidential information, including trade secrets.

47. Defendant has manifested an intent to repudiate Sections 3 and 5 of his Confidentiality Agreement and thus breach his Agreement by accepting employment with BBakeries' direct competitor, Hostess.

48. Defendant's prospective breach of his Confidentiality Agreement threatens immediate and irreparable harm to BBakeries.

49. BBakeries has no adequate remedy at law, and will continue to suffer substantial and immediate irreparable harm unless Defendant is enjoined as requested below.

---

[4] Plaintiff Bimbo Bakeries USA, Inc. is a wholly owned subsidiary of BBU, Inc.

50. Greater injury will be inflicted on BBakeries by the denial of the relief requested herein than will be inflicted on Defendant by the granting of this relief.

## COUNT II

### MISAPPROPRIATION OF TRADE SECRETS – 12 Pa.C.S.A. § 5302

51. Paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

52. Defendant will inevitably disclose to Hostess, or use on behalf of Hostess and for Hostess's exclusive benefit, confidential information and trade secrets of BBU without the express or implied consent of BBakeries.

53. By virtue of Botticella's misappropriation of trade secrets, BBakeries is threatened with immediate and irreparable harm.

54. Defendant's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of BBakeries.

55. Greater injury will be inflicted upon BBakeries by the denial of the relief requested herein than will be inflicted on Botticella by the granting of such relief.

### PRAYER FOR RELIEF

WHEREFORE, BBakeries requests the following relief:

(a) Defendant be enjoined, preliminarily until hearing, and thereafter indefinitely, from using or presenting any of BBakeries' trade secrets or proprietary and confidential information to Hostess, or to any other party other than BBakeries, or its parents and subsidiaries, unless he does so solely to benefit BBakeries, or its parents and subsidiaries.

(b) Defendant be directed to immediately return to BBakeries all Company documents and information, with the exception of documents and information pertaining to Defendant's personal compensation.

(c) Defendant be ordered to promptly produce copies of all such Company documents during the expedited discovery process related to Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction and Other Relief.

(d) Defendant be directed to pay damages to BBakeries for any actual losses or damages caused by his breach of his Confidentiality Agreement and misappropriation of trade secrets.

(e) Defendant be directed to pay the costs of these proceedings.

(f) This Court order such other and further relief as it deems appropriate, including, but not limited to, attorneys' fees and punitive damages.

Dated: January 15, 2010

Respectfully submitted,

/s/ Kasturi Sen
Michael L. Banks
Victoria L. Gorokhovich
Kasturi Sen
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
215-963-5387/5642/5600
mbanks@morganlewis.com
vgorokhovich@morganlewis.com
ksen@morganlewis.com

Attorneys for Plaintiff
BIMBO BAKERIES USA, INC.