IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BIMBO BAKERIES USA., INC., | ) | CIVIL ACTION NO. 2:10-cv-00194-RBS |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| CHRIS BOTTICELLA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW ON THE
## INEVITABLE DISCLOSURE DOCTRINE

Defendant Chris Botticella ("Mr. Botticella"), by and through his counsel, Schnader

Harrison Segal & Lewis LLP, respectfully submits this Memorandum of Law on the Inevitable

Disclosure Doctrine as follows:

**I.    Introduction**

This is an action to enjoin, and preclude, what Bimbo Bakeries USA, Inc. ("BBakeries"

or "Plaintiff") characterizes as the "inevitable disclosure" of trade secrets.  This is not an action

to address any actual or threatened misappropriation of trade secrets.  Indeed, there is not a single

assertion suggesting that Mr. Botticella has used or disclosed, or threatened to use or disclose,

any protected information he obtained while at BBakeries.  Rather, BBakeries alleges that Mr.

Botticella, by merely accepting employment with Hostess Brands, Inc. ("Hostess"), has

"manifested an intent" to breach his confidentiality agreement and will "inevitably disclose"

confidential information and trade secrets in his new position.  (*See* Complaint ¶¶ 47, 52).

Because BBakeries' claims are premised entirely on the inevitable disclosure doctrine, this

Memorandum addresses in detail the doctrine's current status under Pennsylvania law, and the

limited circumstances under which it has been applied.

II.   **Discussion**

   A.   **To Obtain Relief Premised On the Inevitable Disclosure Doctrine, Plaintiff Must Establish It Is "Impossible" For Mr. Botticella To Perform His Job Duties With Hostess Without Revealing Trade Secrets.**

Although the Pennsylvania Supreme Court has not addressed the viability of a claim for inevitable disclosure in Pennsylvania, the Superior Court endorsed the limited application of the doctrine in *Air Products & Chems., Inc. v. Johnson*, 442 A.2d 1114 (Pa. Super. Ct. 1982).   In *Air Products*, the defendant was a trained engineer and in charge of sales, eventually as a vice-president, for Air Products in a market niche for industrial gasses called "on-site sales".[1]   *Id.*, 442 A.2d at 1116.   In the course of his employment with Air Products, the defendant signed a non-disclosure agreement.   *Id.* at 1117.   During his employment, the defendant acquired substantial internal information, much of which was technical data, concerning Air Products' on-site sales segment.   *Id.*   Eventually, defendant was hired away by Liquid Air, a direct competitor in the industrial gas business, generally, but one with little experience in the on-site sales market.   *Id.* 1116-7.

Following the suit filed by Air Products, the trial court ruled that the defendant (Mr. Johnson) *could* commence working for Liquid Air, but enjoined Liquid Air from employing Mr. Johnson in its "on-site operations."   *Id.* at 1115-6.   The trial court determined that "it would be impossible [for defendant] to perform his managerial functions in on-site work without drawing on knowledge he possesses of Air Products' confidential information."   *Id.* at 1124-5 (emphasis added).   Recognizing that their scope of review was extremely narrow – "to determine whether

---

[1]   On-site sales is essentially a means of supplying industrial gasses in bulk via pipeline to large industrial customers.   *Air Products*, 442 A.2d at 1116.

there were reasonable grounds... which justified the trial court's actions" – the Superior Court affirmed:

> While <u>we do not adopt the reasoning of the trial court or its use of the term inevitable</u>, we are unable to find that the trial court committed reversible error.

*Id.* at 1116, 1124 (emphasis added).

Despite the Superior Court's unwillingness to adopt a "likeliness" or "inevitable" standard in conjunction with the inevitable disclosure doctrine, *Air Products* has been misapplied nonetheless as requiring only a showing that the former employee's employment at a competitor company would "*likely result in*" or "*inevitably result in*" the disclosure of trade secrets. *See, e.g. Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1232 (Pa. Super. Ct. 1989) (barring the acquisition of a rival company on the basis of perceived inevitability or likelihood of trade secret disclosure).

In response to the misapplication of *Air Products*, in a September 4, 2001, unreported opinion, the Superior Court of Pennsylvania reiterated the proper standard in conjunction with the inevitable disclosure doctrine. *See Bacharach, Inc. v. Testo, Inc.*, No. 1257 WDA 2000, p. 9 (Pa. Super. Ct. Sept. 4, 2001) (Del Sole, Johnson, Beck, JJ).[2] More specifically, the Superior Court stated:

> [i]nitially, we must dispel the notion, implicit in [appellant's] argument, that our holding in *Air Products* enshrines the 'inevitable disclosure' doctrine as an inviolable rule of law.  In *Air Products*, we concluded merely that the trial court did not commit reversible error in applying this doctrine to help the injury necessary for issuance of an injunction.  The following decision [in *Air Products*] is illustrative:
>
> [The appellants] contend that inevitability of disclosure is not the proper standard by which the trial court can determine that it was clear that an

---

[2] For the convenience of the Court, a copy of the *Bacharach* decision is attached hereto as Exhibit A.

immediate and irreparable injury would result unless an injunction issued. *While we do not adopt the reasoning of the trial court or its use of the term inevitable, we are unable to find that the trial court committed reversible error.* The lower court held that: "It would be impossible (for [the appellant employee]) to perform his managerial functions in on-site work without drawing on knowledge he possesses of Air Products' confidential information." We are satisfied that this expression of its determination of the likelihood of disclosure was proper. The court reasoned that the duties which [the appellant employee] was to perform at Liquid Air would make it impossible for [that employee] not to disclose trade secrets. . . Accordingly, we hold that the trial court acted reasonably when it issued a preliminary injunction.

*Id.* at 9 (emphasis in original).

Significantly, in *Bacharach*, the Superior Court further recognized "our endorsement of the concept of inevitable disclosure was conditioned both upon the <u>specific facts</u> raised in *Air Products* and <u>the limitations on our standard of review</u>." *Id.* (emphasis added). Further, the Superior Court explained:

[i]n *Air Products*, we affirmed the requirement of multiple elements of proof necessary prior to issuance of an injunction to prevent the disclosure of trade secrets. The existence of a cognizable trade secret, in itself, is not enough; in the absence of proof to establish the likelihood of disclosure, even the former employees' intimate familiarity with acknowledged trade secrets is irrelevant. . . Bacharach relies on the general proposition, discussed in *Air Products*, that a person may be enjoined from engaging in employment, or certain aspects of his employment, when that employment is 'likely' to result in the disclosure of his prior employer's confidential information. . . Bacharach fails to recognize, however, **that our resolution in *Air Products* was not based on the mere "likelihood" of disclosure. . . In point of fact, we determined that the inevitable disclosure doctrine might be properly applied because it would be *impossible* for the employee to perform his duties at the new employer without disclosing trade secrets**.

*Id.* at 13-14 (emphasis added); *accord Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (recognizing in trade secrets claims "such a wide-ranging injunction is atypical; rather, the usual injunction merely prevents the employee from disclosing specified trade secrets. Under Pennsylvania law, a broader injunction only lies when it is "virtually impossible . . . [for the

- 4 -

employee] to perform his . . . duties for [his new employer] without in effect giving [it] the benefit of [his] confidential information." (citing *Restatement (Third) of Unfair Competition*, § 44 cmt. d (1995) (An injunction ordinarily prohibits only use or disclosure of the trade secret and information substantially derived from the trade secret."); *Air Products*, 442 A.2d at 1123. Significantly, the *Bacharach* decision does not endorse the use of inevitable disclosure doctrine in Pennsylvania. *Bacharach*, No. 1257 WDA 2000, p. 13-14. Rather, it distances itself from the concept as a whole by limiting its application to instances where disclosure would, in fact, be "impossible." *See id. See also Oberg Industries, Inc. v. Finney*, 382 Pa. Super. 525, 532, 555 A.2d 1324, 1327 (1989) (vacating preliminary injunction on the ground that the evidence did "not demonstrate the inevitability of disclosure as that found in *Air Products* …")

Thus, Pennsylvania courts have been apprehensive in applying the "inevitable disclosure doctrine," because in doing so, a court is essentially imposing a *de facto* non-compete agreement upon a former employee. For the inevitable disclosure doctrine to apply, the former employer must show that it would be *impossible* for its former employee to perform his duties at the new employer without disclosing trade secrets. *Air Products*, 442 A.2d at 1124; *Bacharach*, No. 1257 WDA 2000, pp. 13-14.

Here, BBakeries cannot establish that it will be impossible for Mr. Botticella to perform his responsibilities for Hostess without using or disclosing that internal information. Even assuming, as BBakeries suggests, that Mr. Botticella has committed to memory all of the expansive data to which he was supposedly privy, most if not all of that information is irrelevant to his new position with Hostess. Mr. Botticella does not need any internal BBakeries information to perform his duties for Hostess, and BBakeries certainly cannot demonstrate that it

would be *impossible* for Mr. Botticella to work for Hostess without using or disclosing protected information.

Further, where (as here) the plaintiff sought and obtained Mr. Botticella's signature to a detailed agreement containing a strict confidentiality clause, clauses prohibiting solicitation of customers and employees, and a non-compete clause that by its terms was applicable **only** "while employed," *see* Exhibit A to Complaint, ¶¶ 1-6, it is clear that the intent of the parties was that Mr. Botticella be free to obtain employment with a competitor **after** his employment with the plaintiff ended, subject only to his compliance with the provisions of his agreement governing confidentiality and non-solicitation of customers and employees. Plaintiff should not be able to rely on a loose application of the inevitable disclosure doctrine to obtain, from the Court, a restriction on Mr. Botticella's employment that it clearly could have obtained, but chose not to obtain, by agreement.

**B.      To Obtain Relief Premised On the Inevitable Disclosure Doctrine, Plaintiff Must Also Establish Mr. Botticella Possesses Highly Technical Information That Will Be Used In His New Position With Hostess.**

Pennsylvania courts have granted relief under the inevitable disclosure doctrine only upon a showing of specific, technical information that might be passed from firm to firm, not simply business knowledge. In *Air Products*, the employee possessed intimate, highly technical knowledge of his former employer's research and development data for on-site gas delivery technologies. The employee was also hired by his new employer to work with the on-site mode of delivery of industrial gases, a trade secret his former employer had mastered. *Air Products*, 442 A.2d at 1117. See also *Oberg Industries, supra*, in which the Court reversed a lower court's entry of a preliminary injunction, stating:

> The decision therein was based upon the particular knowledge possessed by the employee as it related to the nature of his job.

Although the employee in *Air Products* was involved in sales, as is Finney in this case, it is clear that the court centered on his engineering background and the special knowledge he possessed relating to a method of oil recovery not yet developed by the competitor company.

In this case, Finney possessed no such educational background.  (555 A.2d at 532)

Moreover, the inevitable disclosure doctrine does not support the grant of a preliminary injunction where the allegations are based only on the argument that the employee performs similar functions for two rival employers:

[i]f the former employer's allegation of use of trade secrets is predicated upon nothing more than an itemization of every step of the employer's production process and an assertion that in the next employment the employee will be engaged in a similar activity, a court would probably look somewhat askance at a request for relief based on asserted inevitability of use.

1 Milgrim on Trade Secrets § 5.02[3][d](2002);  *See, e.g., Midland-Ross Corp v. Sunbeam Equip. Corp.*, 316 F. Supp. 171, 177 (W.D. Pa. 1970) (denying the injunction on the basis that although some of plaintiff's furnace adjustment methods might be used by ex-employee, he primarily would utilize his own skills and experience, and the injury to plaintiff, if any, would not be irreparable).  Thus, asserting that Mr. Botticella will perform similar functions for Hostess that he performed for BBakeries is insufficient to support a claim premised on inevitable disclosure.

In sum, BBakeries must establish that it will be "impossible" for Mr. Botticella to perform his job duties at Hostess without disclosing trade secrets and that Mr. Botticella was privy to the type of highly technical information found in *Air Products*.  Further, BBakeries must establish that Mr. Botticella, in his new position with Hostess, will be working to develop the same type of technologies at Hostess that are allegedly trade secrets at BBakeries.  Asserting that

he will perform similar functions for Hostess that he performed for BBakeries is insufficient to support a claim for inevitable disclosure.

Applied here, BBakeries cannot establish that it will be "impossible" for Mr. Botticella to perform his job duties at Hostess without disclosing trade secrets, nor that Mr. Botticella was privy to the type of highly technical information found in *Air Products*. Moreover, unlike the employee in *Air Products*, Mr. Botticella was not hired by Hostess to perform the same work that he performed for BBakeries. Asserting that Mr. Botticella will perform similar functions for Hostess that he performed for BBakeries is insufficient to support a claim for inevitable disclosure. Indeed, the evidence will show that Hostess has its own processes and methodologies and that Mr. Botticella's knowledge of BBakeries' confidential information will be of no value to him in performing his duties for Hostess.

**C.    Plaintiff's "Deception" Arguments Are Legally and Factually Meritless.**

Based on Plaintiff's Complaint and moving papers, Plaintiff can be expected to argue at the hearing that Mr. Botticella engaged in various deceptive practices. As Defendant will demonstrate at the hearing, these allegations of deception are factually meritless. All Defendant wishes to state in this brief is that, as a legal matter, the expected mud-slinging by Plaintiff should not divert the Court's focus on the real issues, namely, (1) whether it in fact will be impossible for Mr. Botticella to perform his duties for Hostess without using or disclosing BBakeries' trade secrets and confidential information, and (2) whether BBakeries should be entitled to prevent Mr. Botticella from working for Hostess when, under the only fair reading of its contract with Mr. Botticella, it is clear that BBakeries had agreed that Mr. Botticella could work for a competitor after leaving its employ, provided he honor the confidentiality and non-solicitation provisions. We submit that the answer to both questions is clearly "no."

### III.     Conclusion

Accordingly, BBakeries cannot demonstrate either a likelihood of success on the merits of its inevitable disclosure claim or a probability that that Mr. Botticella's employment by Hostess will cause plaintiff irreparable harm.  Thus, its request for preliminary injunctive relief must be denied.  *See Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987) (stating: "To obtain a preliminary injunction, the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted").  (Emphasis in original) *See also In Re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) (stating that "we cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent").

Elizabeth Ainslie
PA Id. No. 35870
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
120 Fifth Avenue
Pittsburgh, PA   15222
(215) 751-2000

Date:  January 22, 2010                                   *Counsel for Defendant, Chris Botticella*

EXHIBIT A

J. A22027/01

BACHARACH, INC.,                 :    IN THE SUPERIOR COURT OF
            Appellant            :          PENNSYLVANIA
                                 :
        v.                       :
                                 :
TESTO, INC., JAMES E. BURKE,     :
JOHN W. FIGAN, JAMES E. PRITCHARD :
and WILLIAM P. SPOHN             :
            Appellees            :    No. 1257 WDA  2000

Appeal from the Order dated June 27, 2000,
Court of Common Pleas, Allegheny County,
Civil Division at No. GD 99-20135.

BEFORE:  DEL SOLE, P.J., JOHNSON, and BECK, JJ.

**F I L E D** SEP 4 2001

MEMORANDUM:

   Bacharach, Inc. appeals the trial court's order refusing a preliminary

injunction against Testo, Inc., and the individual defendants.  Bacharach

seeks to prevent Testo's employment of the respective individuals, all of

whom are former Bacharach employees, on the basis that Testo obtained

their services by raiding Bacharach's key employees in an effort to seize

trade secrets and market share.  Bacharach also seeks enforcement of

restrictive covenants to which the employees agreed prior to or during their

employment with Bacharach.  The court concluded that Bacharach's

evidence failed to satisfy multiple elements of proof necessary for entry of

an injunction.  Bacharach contends that the court failed to apply controlling

J. A22027/01

law and entered findings of fact unsupported by the evidence.  For the following reasons, we affirm.

This matter arises out of a trade dispute between two manufacturer/suppliers of heating, ventilation, and air conditioning (HVAC) components for the commercial market.  Bacharach, a Delaware corporation headquartered in Pittsburgh, was at the time of these events the dominant provider of such components in the North American market.  Testo, the American subsidiary of a German corporation, marketed some products similar to Bacharach's, but controlled only a small segment of the North American market.  James E. Burke, John W. Figan, James E. Pritchard, and William P. Spohn are currently employed by Testo at the level of regional marketing director or higher.  Each of them was previously employed by Bacharach in a similar capacity.  Figan, Pritchard, and Spohn were subject to restrictive covenants that purported to govern their respective rights to engage in employment with one of Bacharach's competitors and/or to use or divulge Bacharach's "trade secrets."

In May 1998, Spohn, who was Bacharach's "Director of Strategic and New Product Planning," left Bacharach's employ and went to work for a third party, where he remained until July 1999.  That same month, after several months of preliminary negotiations, Spohn accepted employment with Testo as director of all Testo's sales and marketing efforts in North America.

-2-

J. A22027/01

Subsequently, Spohn spoke with Pritchard and Burke about coming to work for Testo. In turn, Burke apprised Figan of Testo's hiring needs and Figan submitted his application for employment at Testo. Testo offered employment to each of the three men and all accepted, submitting their resignations to Bacharach on November 9, 1999. Notwithstanding a four-month restriction on employment by a competitor specified by their prior employment agreements, Pritchard and Figan started work with Testo immediately. Each man assumed primary responsibility for marketing Testo's products in a large segment of the North American market that corresponded with the territory for which he had been responsible while employed by Bacharach.

Bacharach commenced the underlying action on December 3, 1999, by "Verified Complaint in Equity" asserting as causes of action unfair competition, theft of trade secrets, breach of restrictive covenants, tortious interference, and civil conspiracy. With its complaint, Bacharach filed a "Motion for Special and/or Preliminary Injunction" pursuant to Pa.R.C.P. 1531 seeking to prevent Testo's continued employment of Pritchard, Burke, and Figan and Testo's solicitation of any customer that was then, or ever had been, a customer of Bacharach. Following expedited discovery, the trial court convened a hearing before the Honorable Judith L. A. Friedman on Bacharach's motion for preliminary injunction. Following six days of

-3-

J. A22027/01

testimony, Judge Friedman issued Findings of Fact and Conclusions of Law determining that the evidence adduced at the hearing failed to establish Bacharach's entitlement to injunctive relief.   Consequently, on June 27, 2000, the court denied Bacharach's motion for preliminary injunction. Bacharach filed this appeal.

Bacharach presents the following questions for our review:

I.      Whether the Honorable Trial Judge abused her discretion and/or committed and error of law by failing to file and/or apply the rule set forth by the Pennsylvania Supreme Court in **Morgan's Home Equipment v. Martucci**, 390 Pa. 618, 136 A.2d 838 (1957).

II.     Whether the Honorable Trial Judge erred when she failed to follow and/or apply **Air Products & Chemicals v. Johnson**, 296 Pa. Super. 405, 44[2] A.2d 1114 (1982) and failed to enjoin Burke, Pritchard, Cole and Figan from commencing employment at Testo despite evidence that disclosure of Bacharach's trade secrets is "inevitable"?

III.    Whether the Honorable Trial Judge erred when she misapplied **Air Products & Chemicals v. Johnson** by admitting improper character evidence concerning the trustworthiness of Burke, Pritchard, Figan and Spohn?

IV.     Whether the Honorable Trial Judge abused her discretion by making findings of fact and conclusions of law not supported by the record?

V.      Whether the Honorable Trial Judge abused her discretion and/or committed an error of law by improperly admitting evidence relating to and/or concerning Burke, Pritchard and Figan's state of mind prior to their resignations on November 9, 1999?

J. A22027/01

VI.   Whether the Honorable Trial Judge abused her discretion and or committed an error of law when she failed to enforce the restrictive covenants applicable to Spohn, Pritchard, Figan and Cole?

Brief for Appellant at 4.

Bacharach's questions on appeal raise issues of trial court error arising from the court's refusal to enter a preliminary injunction.  Our standard of review of such questions is exceptionally narrow, granting substantial deference to the chancellor's determinations.  "[A]n appellate court's review of the grant or denial of a preliminary injunction is limited to a determination of whether any apparently reasonable grounds existed for the action taken by the trial court[.]"  *Sovereign Bank v. Harper*, 674 A.2d 1085, 1091 (Pa. Super. 1996).  "We are bound by the chancellor's findings of fact, and may not revisit the merits of the underlying controversy."  *West Penn Specialty MSO, Inc. v. Nolan*, 737 A.2d 295, 299 (Pa. Super. 1999).  Accordingly, "[w]e may interfere with the chancellor's decision only if the certified record reveals that *no grounds* exist to support the decree, or that the rule of law upon which the court relied was palpably erroneous or misapplied."  *Id.* (emphasis added).

As a general matter, the chancellor may grant a preliminary injunction only if: 1) the plaintiff's right to relief is clear as a matter of controlling law; 2) the need for relief is immediate; and, 3) the plaintiff will sustain

J. A22027/01

irreparable injury if the injunction is not granted. *See Harper*, 674 A.2d at 1091 (quoting *Willman v. Children's Hospital of Pittsburgh*, 479 A.2d 452, 454 (Pa. 1984)). "An injury is regarded as 'irreparable' if it will cause damage that can be estimated only by conjecture and not by an accurate pecuniary standard." *Nolan*, 737 A.2d at 299.

In support of its first question on appeal, Bacharach asserts that the chancellor erred, ostensibly as a matter of law, in failing to apply our Supreme Court's decision in *Morgan's Home Equipment v. Martucci*, 136 A.2d 838 (Pa. 1957). *Morgan's Home* provides, in part, that a business entity may not expropriate the employees of a competitor as a means to obtain that competitor's confidential business data, or "trade secrets." Accordingly, we interpret Bacharach's assertion of *Morgan's Home* to state that the chancellor failed to recognize or apply caselaw proscribing certain conduct by an employer to obtain the services of members of a competitor's workforce. Brief for Appellant at 18-19

The rule in *Morgan's Home* to which Bacharach cites provides as follows:

> The systematic inducing of employe[e]s to leave their present employment and take work with another is unlawful when the purpose of such enticement is to cripple and destroy an integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employe[e]s.  So also, when the inducement is made for the purpose of having the employe[e]s commit wrongs, such as disclosing their former

-6-

J. A22027/01

> employer's trade secrets or enticing away his customers, the injured employer is entitled to protection.

***Morgan's Home***, 136 A.2d at 847.   Upon review of the chancellor's memorandum, we find Bacharach's assertion of legal error unsupported. The chancellor's conclusions, in fact, mirror the foregoing rule.   The chancellor concluded: "By offering employment to Spohn, Burke, Figan and Pritchard, Testo *did not intend to cripple and destroy* Bacharach. . . . Testo did not hire Burke, Figan and Pritchard for the purpose of having them *commit wrongs, such as disclosing Bacharach's trade secrets or enticing away customers*."  Memorandum in Support of Order, 7/14/00, at 16 (¶¶98, 99).   Accordingly, Bacharach's assertion that the chancellor failed to apply the law as stated in ***Morgan's Home*** is without foundation.   Bacharach's further suggestion that the chancellor's failure to reference ***Morgan's Home*** by name constitutes some form of error, Brief for Appellant at 18-19, is unsupported by reference to authority and as such bears no further discussion.

Upon further review, we conclude that Bacharach's lengthy argument in support of this first issue amounts primarily to an assertion that the chancellor's adjudication is against the weight of the evidence.  Bacharach's analysis of the record, while rendered in exhaustive detail, demonstrates only that evidence was adduced to support a disposition contrary to the one

J. A22027/01

the chancellor ultimately reached; it does not discuss how or why the evidence on which the court relied does not support her findings. **See** Brief for Appellant at 21-29.  The fact that evidence of record is consistent with an alternative disposition does not constitute a deficiency in the disposition the chancellor reached, and so does not demonstrate reversible error.  So long as the record provides "any apparently reasonable grounds" for the chancellor's decision, we are compelled to affirm.  **See Sovereign Bank v. Harper**, 674 A.2d at 1091.  Thus, the evidence Bacharach advances, that Testo engaged in a process of "raiding" Bacharach's key employees, cannot establish grounds for reversible error so long as other evidence supports the chancellor's conclusion.  Because Bacharach has failed to demonstrate or even to discuss the deficiency of the evidence *on which the court relied*, we find neither error of law in the court's application of the principles of **Morgan's Home**, or abuse of discretion in its consideration of the evidence relative to this issue.

In its second question, Bacharach contends that the chancellor erred in refusing to enjoin Burke, Pritchard, Figan, and another employee named MaLou Cole, from commencing employment with Testo because each employee inevitably would disclose Bacharach's trade secrets to Testo.  In support of its reliance on this "inevitable disclosure" theory, Testo cites our

-8-

J. A22027/01

decision in *Air Products & Chemicals, Inc. v. Johnson*, 442 A.2d 1114

(Pa. Super. 1982).

Initially, we must dispel the notion, implicit in Bacharach's argument,

that our holding in *Air Products* enshrines the "inevitable disclosure"

doctrine as an inviolable rule of law.  In *Air Products*, we concluded merely

that the trial court did not commit reversible error in applying this doctrine

to help define the injury necessary for issuance of an injunction.  The

following discussion is illustrative:

> [The appellants] contend that inevitability of disclosure is not the
> proper standard by which the trial court can determine that it
> was clear that an immediate and irreparable injury would result
> unless an injunction issued.  *While we do not adopt the
> reasoning of the trial court or its use of the term inevitable, we
> are unable to find that the trial court committed reversible error.*
> The lower court held that: "It would be impossible (for [the
> appellant employee]) to perform his managerial functions in on-
> site work without drawing on knowledge he possesses of Air
> Products' confidential information."  We are satisfied that this
> expression of its determination of the likelihood of disclosure was
> proper.  The court reasoned that the duties which [the appellant
> employee] was to perform at Liquid Air would make it impossible
> for [that employee] not to disclose trade secrets. . . .
> Accordingly, we hold that the trial court acted reasonably when it
> issued a preliminary injunction.

*Air Products*, 442 A.2d at 1124-25 (emphasis added, internal citations

omitted).  Thus, our endorsement of the concept of inevitable disclosure was

conditioned both upon the specific facts raised in *Air Products* and the

limitations of our standard of review.  Accordingly, Bacharach's assertion

J. A22027/01

that the chancellor was necessarily bound by *Air Products* to apply "inevitable disclosure" as a measure of irreparable harm is not a correct statement of law.

*Air Products* is properly applied, however, to define the term "trade secret," and to state the law generally applicable to issuance of injunctive relief to prevent disclosure of such trade secrets. *Air Products* provides generally that "[u]nder Pennsylvania law, a person may be enjoined from engaging in employment or certain aspects of his employment where that employment is likely to result in the disclosure of information held secret by the former employer, of which the employee gained knowledge as a result of his former employment situation." *Id.* at 1120. Actual entry of an injunction, however, is not appropriate in the absence of specific elements of proof to be satisfied by the former employer.

> To be entitled to equitable relief, the burden [is] on (the employer) to show: (1) that there was a trade secret, or . . . a secret process of manufacture; (2) that it was of value to the employer and important in the conduct of business; (3) that by reason of discovery or ownership[,] the employer had the right to use and enjoyment of the secret; and (4) that the secret was communicated to (the employee) while he was employed in a position of trust and confidence, under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer.

*Id.* (quoting *Felmlee v. Lockett*, 351 A.2d 273, 277 (Pa. 1976)).

A "trade secret" is defined by the Court in *Air Products* as follows:

J. A22027/01

> A trade secret may consist of any formula, pattern, device or
> compilation of information which is used in one's business, and
> which gives him an opportunity to obtain an advantage over
> competition who do not know or use it.  It may be a formula for
> a chemical compound, a process of manufacturing, treating or
> preserving materials, a pattern for a machine or other device, or
> a list of customers....  A trade secret is a process or device for
> continuous use in the operation of the business.

*Id.* at 1120-1121 (quoting RESTATEMENT OF TORTS § 757 cmt. B).  A trade

secret does not, however, include a worker's "aptitude, his skill, . . . his

manual and mental ability, and such other subjective knowledge as he

obtains while in the course of his employment...." ***Christopher M's Hand***

***Poured Fudge, Inc. v. Hennon***, 699 A.2d 1272, 1275 (Pa. Super. 1997)

(quoting ***Pittsburgh Cut Wire Co. v. Sufrin***, 38 A.2d 33, 34 (1944)).

Moreover, a "trade secret" must be a particular secret of the complaining

employer and not a general "secret" of the trade in which he is engaged.

***See Air Products***, 422 A.2d at 1121.

In this matter the chancellor declined to enter an injunction, finding

that the information Bacharach's former employees possessed was merely

subjective knowledge garnered during employment and so did not satisfy

our definition of "trade secret." Memorandum in Support of Order, 7/14/00,

at 18, 19 .  The chancellor concluded accordingly that the record did not

support Bacharach's theory of "inevitable disclosure." ***Id.*** at 17-19.

Bacharach contends that the chancellor's determination is erroneous, as

J. A22027/01

Burke, Pritchard, Cole, and Figan enjoyed access to Bacharach's monthly sales reports and distributor discount tables "that are not known outside of Bacharach." Brief for Appellant at 34. Bacharach argues as well that Burke and Pritchard were "involved in new product development," *id.* at 32, and "aware of 'unique engineering limitations' and other 'mechanical issues' with existing Bacharach products," *id.* Finally, Bacharach asserts that Figan, among other things, reviewed Bacharach's "sales histories, costs and market projections," *id.*, "helped to negotiate special confidential pricing arrangements with large appliance manufacturers," *id.* at 33, and "authored 'Program Proposals' for new product lines," *id.*

    We cannot conclude, based on Bacharach's argument, that any of the knowledge the company ascribes to its former employees constitutes a trade secret. Notwithstanding the fact that the record in this matter was sealed by order of the trial court, Bacharach's description of its purported "secrets" and its former employees' involvement with them, is sufficiently cryptic that we are unable to make any precise determination regarding the legal character of the information the employees may possess. Nonetheless, assuming for the sake of argument that these employees did possess trade secrets, we cannot conclude, on the basis of that factor alone, that the chancellor erred in refusing to enjoin their employment by Testo.

J. A22027/01

In *Air Products*, we reaffirmed the requirement of multiple elements of proof necessary prior to issuance of an injunction to prevent the disclosure of trade secrets. *See* 442 A.2d at 1120 (quoting *Felmlee v. Lockett*, 351 A.2d 273, 277 (Pa. 1976)). The existence of a cognizable trade secret, in itself, is not enough; in the absence of proof to establish the likelihood of disclosure, even the former employees' intimate familiarity with *acknowledged* trade secrets is irrelevant. In this particular, Bacharach's argument fails. Bacharach relies on the general proposition, discussed in *Air Products*, that "a person may be enjoined from engaging in employment, or certain aspects of his employment, when that employment is 'likely' to result in the disclosure of his prior employer's confidential information." Brief for Appellant at 30. Thus, Bacharach argues elements of the testimony, or inferences to be drawn therefrom, to establish that Testo might be motivated by business concerns to obtain a disclosure from the employees of any trade secrets they may possess. Brief for Appellant at 40 ("The likelihood of disclosure is amplified by the fact that Testo has always been interested in Bacharach's trade secrets . . . Testo was in trouble and needed to somehow obtain advantage over Bacharach."). Bacharach fails to recognize, however, that our resolution in *Air Products* was not based on the mere "likelihood" of disclosure Bacharach advocates. In point of fact, we determined that the inevitable disclosure doctrine might be properly applied

-13-

J. A22027/01

because "it would be *impossible* for the employee to perform his duties at the new employer without disclosing trade secrets." **See** 442 A.2d at 1124-25 (emphasis added).  Bacharach fails to satisfy this standard as it largely omits to discuss the duties of the employees at Testo and to analyze how and why these duties cannot be performed without recourse to Bacharach's trade secrets.   We have identified only one occasion in its voluminous discussion of this issue where Bacharach attempts to satisfy this standard. Brief for Appellant at 41.   Referring to Spohn, Bacharach provides only a summary conclusion that: "There is almost no way he can effectively manage the development of Testo's refrigerant leak detector without using Bacharach's trade secrets." **Id.**   Bacharach fails entirely, however, to explain why this must be so; e.g. to aver that the technology employed by Bacharach provides the only means by which a refrigerant leak detector may be made.   Without such proof we are compelled to conclude that it is Bacharach, rather than the chancellor, that has failed to satisfy the requirements of **Air Products**.  Accordingly, we find no merit in Bacharach's second question presented.

In Bacharach's third question presented, the company poses a challenge to the chancellor's admission of character evidence tending to demonstrate that Burke, Pritchard, Figan and Spohn are trustworthy and would not divulge Bacharach's confidential information to Testo.  Brief for

-14-

J. A22027/01

Appellant at 4.   Bacharach argues that such evidence is not relevant to analysis of the factors applied in *Air Products* for issuance of equitable relief, as a consequence of which, the chancellor erred in admitting it.   *Id.* We find no merit in Bacharach's assertion.

The question of admissibility of evidence, including character evidence, is within the sound discretion of the trial court.   *See Peled v. Meridian Bank*, 710 A.2d 620, 625 (Pa. Super. 1998).   Accordingly, our standard of review is narrow; we may reverse only if the court abused its discretion or erred as a matter of law in admitting the evidence in question.   *Id.* Moreover, the burden of persuasion rests with the appellant to show not only a technical error, but also harm or prejudice resulting from the error.   *See Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa. Super. 1999).

> The basic requisite for the admission of any evidence is that it be both competent and relevant.   Evidence is "competent" if it is material to the issues to be determined at trial, and "relevant" if it tends to prove or disprove a material fact in issue.   The question of whether evidence is relevant and, therefore, admissible, is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion.

*Id. See also* Pa.R.E. 401.

Upon review of the evidence to which Bacharach objects, in the context of its allegations in this case, we find no error in the court's ruling.

-15-

J. A22027/01

The proffered character evidence was both competent, and relevant to Bacharach's assertion that Testo engaged in predatory hiring practices intended to gain access to Bacharach's "trade secrets" through disclosure by the company's key employees.   Although, as Bacharach argues, such evidence does not necessarily bear on the factors enumerated in *Air Products* to establish inevitable disclosure, it is directly relevant to the case Bacharach attempted to make under *Morgan's Home*. *See* 136 A.2d at 847 ("So also, when the inducement is made for the purpose of having the employe[e]s commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers, the injured employer is entitled to protection.").   Clearly, evidence that the employees on whom Testo might rely to disclose trade secrets would not cooperate in doing so tends to disprove Bacharach's allegations.   Thus, evidence concerning the character of the individual employees was relevant to the issue most central to Bacharach's case.   Accordingly, Bacharach fails, in its third question, to demonstrate reversible error.

In its fourth question, Bacharach asserts that the chancellor erred in reaching certain findings of fact and conclusions of law that it claims are unsupported by the evidence.   Brief for Appellant at 43.   In support, Bacharach designates multiple findings and cites evidence to support

-16-

J. A22027/01

contrary findings. *Id.* at 43-45 (citing chancellor's findings ¶¶ 42, 68, 88, 98, 99, 105, 106, 107, 111, 112).

We recognize, as Bacharach points out, that the chancellor's findings and conclusions are reviewable and may serve as a basis for reversal if unsupported by the record. Indeed, "where a lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law." *Horner v. Horner*, 719 A.2d 1101, 1103 (Pa. Super. 1998). We recognize as well, however, that as in all matters on appeal, the appellant bears the burden of persuasion to demonstrate that the determinations it assigns as error are, in fact, grounds for reversal. For multiple reasons, we find Bacharach's discussion of the points at issue insufficient to demonstrate such grounds.

Initially, we observe that Bacharach chose "[f]or the sake of brevity," not to provide discussion in support of its assertion that the chancellor's findings 42, 98, 99, 105, 106, and 107, are unsupported by the evidence. Brief for Appellant at 45. Bacharach asserts that these findings "have already been addressed in other parts of this Brief." *Id.* Bacharach provides no indication, however, of where in its voluminous submission these discussions appear; indeed, upon inspection of the Brief, we find no discussion designating these findings and conclusions by number, save for a single reference to finding number 99 in footnote 1. Accordingly, we find

-17-

J. A22027/01

these assertions waived.  ***See Borough of Mifflinburg v. Heim***, 705 A.2d

456, 467 (Pa. Super. 1997) (concluding that because appellant's discussion

in support of issue was limited to one sentence and failed to include

pertinent citations, Superior Court would deem issue waived).  To the extent

that Bacharach addresses the substance of these findings in its discussions

of the prior issues, we have determined that its assertions are without merit.

We will not revisit those determinations here.

Concerning Bacharach's challenge to the remainder of the chancellor's

findings, we observe that the company's analysis of the record, as in its first

question, demonstrates only that evidence was adduced to support a

disposition contrary to the one the chancellor ultimately reached.  Bacharach

does not demonstrate how or why the evidence on which the court relied

does not support its findings.  ***See*** Brief for Appellant at 43-45.  The fact

that evidence of record is consistent with an alternative disposition does not

constitute a deficiency in the disposition the chancellor reached, and so does

not demonstrate reversible error.  So long as the record provides "any

apparently reasonable grounds" for the chancellor's decision, we are

compelled to affirm.  ***See Sovereign Bank v. Harper***, 674 A.2d at 1091.

Because Bacharach has failed to demonstrate that there are *no grounds* for

the chancellor's findings, we conclude that the issues raised in Bacharach's

J. A22027/01

fourth question are without merit. **See *West Penn Specialty MSO, Inc. v. Nolan***, 737 A.2d at 299.

In its fifth question on appeal, Bacharach challenges the chancellor's admission of evidence of Burke's, Pritchard's, Cole's and Figan's respective states of mind prior to their resignation from Bacharach on November 9, 1999. Brief for Appellant at 45. As we have discussed earlier in this Memorandum, "[t]he basic requisite for the admission of any evidence is that it be both competent and relevant." ***Turney Media Fuel, Inc.***, 725 A.2d at 839. "The question of whether evidence is relevant and, therefore, admissible, is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion." ***Id.*** Upon review of Bacharach's argument, we find no basis for reversal on this issue, as the disputed evidence was demonstrably relevant to the issues posed by Bacharach's causes of action. Bacharach's core allegations raise the specter of a predatory competitor bent on destroying Bacharach as market leader with the assistance of key Bacharach employees, all of whom cooperated, some gleefully, in the process of defection. To the extent that evidence of the defecting employees' states of mind would tend to demonstrate other motivations for their respective departures, it was most certainly relevant to the issue of Testo's alleged predation and the employees' participation in

J. A22027/01

that endeavor.  As such, this evidence was relevant and properly admitted. Accordingly, Bacharach's fifth question fails to raise reversible error.

Finally, in its sixth question on appeal, Bacharach challenges the chancellor's refusal to apply restrictive covenants present in the employment agreements of Figan, Pritchard, Cole, and Spohn.  Brief for Appellant at 47. The chancellor concluded that there are "no significant contractual bars to inhibit the individual defendants from competing with Bacharach," as agreements with Figan, Pritchard, and Spohn had expired prior to the court's disposition of Bacharach's petition for injunctive relief, and MaLou Cole was not joined as a party defendant.   Memorandum in Support of Order, 7/14/00, at 2, 3.

We note, initially, that Bacharach fails to address the bases upon which the chancellor resolved the issues surrounding the parties' various restrictive covenants.   In view of the appellant's burden on appeal to demonstrate trial court error, this omission in itself provides sufficient basis for our affirmance of the chancellor's determination.  We conclude also that the grounds for reversal Bacharach raises, when adjudged on the merits, provide no basis for reversal of the chancellor's determination.

> In Pennsylvania restrictive covenants are enforceable if they are incident to an employment relationship between the parties, the restrictions imposed by the covenant are reasonably necessary for the protection of the employer, and the restrictions imposed are reasonably limited in duration and geographic extent.

J. A22027/01

*All-Pak, Inc. v. Johnston*, 694 A.2d 347, 350 (Pa. Super. 1997) (citing *Morgan's Home*, 136 A.2d 838). However, because restrictive covenants operate to restrain an employee's right to earn a livelihood, they must be strictly construed against the employer and may not be assigned between employers. *See id.* at 351.

Upon review of the record, we conclude that none of the covenants on which Bacharach relies satisfy the forgoing criteria for enforceability. Indeed, Bacharach acknowledges in its Brief that the covenants by which they attempt now to bind Pritchard and Figan were executed in favor of AMBAC Industries, Inc., of which Bacharach had once been a division. Brief for Appellant at 47. AMBAC was later acquired by United Technologies, Inc., which in turn spun off its Bacharach Instrument Division as an independent business entity. Notwithstanding these succeeding changes in ownership, the record bears no indication that these successor entities ever obtained or even sought assignment of AMBAC's rights under the original agreements; nor does Bacharach posit an argument that it succeeded to those rights by operation of law. We conclude accordingly, that Bacharach has no rights against either Pritchard or Figan under the asserted restrictive covenants.

Concerning Spohn, Bacharach directs our attention to an agreement the two executed on April 25, 1988, pursuant to which Spohn agreed "not to

J. A22027/01

disclose any such confidential, proprietary or trade secret information [as he may receive in the employ of Bacharach] to any person without the consent of another employee who is an executive officer of Bacharach, either during my employment by Bacharach or thereafter[.]"   Reproduced Record at 0064a.   Bacharach argues that this agreement binds Spohn in perpetuity. Brief for Appellant at 48.   Assuming that Bacharach's interpretation of this provision is correct, the company cannot demonstrate that "the restrictions imposed are reasonably limited in duration," as required by our law. **See All-Pak**, 694 A.2d at 350.   Moreover, it has not attempted to do so. Accordingly, we find no error in the chancellor's determination that Spohn was not subject to a "significant contractual bar[]" either to competition or disclosure.

Finally, Bacharach posits no substantial argument concerning the covenant allegedly binding MaLou Cole.   Brief for Appellant at 7 n.7.   We conclude accordingly that Bacharach's assertions concerning Cole are waived. **See Borough of Mifflinburg**, 705 A.2d at 467.

For the foregoing reasons, we affirm the order of the trial court denying Bacharach's motion for injunctive relief.

Order **AFFIRMED**.

J. A22027/01

Judgment Entered:

*Eleanor R. Valecko*
Deputy Prothonotary

Date: SEP 4 2001

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2010, I caused a true and correct copy of the foregoing Defendant's Memorandum of Law on the Inevitable Disclosure Doctrine to be served upon the following counsel of record via facsimile.

Kasturi Sen, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Fax: (877) 432-9652

*Counsel for Plaintiff Bimbo Bakeries USA, Inc.*

/s/ Elizabeth K. Ainslie
Elizabeth K. Ainslie